[No. 8,047.—Department One.]
Jan. 19, 1882.

# SAN FRANCISCO AND NORTH PACIFIC RAILROAD COMPANY *v.* THE STATE BOARD OF EQUALIZATION.

TAXATION—ASSESSMENT—STATE BOARD OF EQUALIZATION—RAILROAD CORPORATIONS—CONSTITUTIONAL LAW.—The provision of Section 10, Article xiii, of the Constitution, that the property of railroads operated in more than one county shall be assessed by the State Board of Equalization, is clearly self-executing, and the power thus conferred may be exercised without the aid of any statute.

ID.—POLITICAL CODE—TITLE OF ACT—CONSTITUTIONAL LAW.—The title of the Act of March 23, 1880, entitled "An act to amend Sections 3607, 3617, 3627, 3628, 3629, 3630, 3634, 3640, 3643, 3650, 3651, 3652, 3663, 3673, 3678, 3679, 3717, 3730, 3752, 3756, 3839, 3861, and to repeal Sections 3680, 3887, of an act entitled "An act to establish a Political Code, approved March 12, 1872, relating to revenue, and to add two new sections numbered 3664, 3665," sufficiently expresses the subject of the act.

ID.—STATE BOARD OF EQUALIZATION—EQUALIZATION OF ASSESSMENT ROLL—NOTICE.—Section 9, Article xiii, of the Constitution, so far as it relates to the State Board, has reference to equalization *between counties;* and the same is true of Subdivision 9, Section 3692, of the Political Code.

ID.—ID.—ID.—The State Board has not the power to increase or lower any individual assessment.

ID.—STATE BOARD OF EQUALIZATION—RAILROAD CORPORATIONS—EQUAL PROTECTION OF THE LAWS—CONSTITUTIONAL LAW.—The provision of the Constitution requiring the property of railroad companies operated in more than one county to be assessed by the State Board of Equalization, is not in conflict with the provision of the fourteenth amendment of the Constitution of the United States, that "no State shall deny to any person the equal protection of the laws." The fact that the value of one kind of property is to be ascertained by one officer or board, and the value of another by another—each clothed with the duty and responsibility of ascertaining the *actual* value—does not operate to deprive the owners of either kind of property of legal protection.

ID.—ID.—ID.—CONSTITUTIONAL LAW—LOCAL OR SPECIAL LAW.—As to the proposition that Section 10 of Article xii conflicts with Subdivision 10 of Section 25 of Article iv, without pausing to inquire which of the two provisions should be disregarded if they could not co-exist, it is enough to say that the section of the Constitution first mentioned is not "a local or special law," passed by the Legislature.

ID.—ID.—ID.—ASSESSMENT—STATEMENT.—The sworn statement required of the president of railroad corporations by Section 3664, Political Code, is not binding upon the Board, and may be disregarded by it in the assessment.

Id.—Assessment—Railroads—Description of Roadway.—A description of the "roadway," by giving the *termini,* courses, and distances, is sufficient.

Id.—State Board of Equalization—Assessment of Railroads—City and Town Taxation.—It is not necessary, in the present case, to decide whether Section 10 of Article xiii of the Constitution intends to make the assessment by the State Board of railroad property the assessment upon which the taxes in cities, etc., on such property shall be collected for local purposes. Even if Sections 3664-3665, Political Code, were of no effect so far as they make their assessment the basis of city and town taxation,. the assessment involved in this case would be valid for other purposes.

Id.—Id.—Id.—Fiscal Year.—The Political Code (§ 3692) provides that the State Board of Equalization shall assess railroad property annually, on or before the first Monday in March. The order of assessment thus made need not declare the particular fiscal year or years to which it is applicable.

Id.—Id.—Id.—In this case the order assesses separately the franchise, roadway, roadbed, rails, and rolling stock, and it is therefore unnecessary to determine whether it was obligatory on the Board to do so.

Id.—Id.—Id.—Apportionment.—The Constitution does not in terms require that the assessed value of each item should be separately *apportioned,* and that the Political Code does not contemplate such separate distribution is sufficiently apparent from Section 3650.

Id.—Id.—Id.—Equalization—Petition.—By Section 3664, Political Code, the Board must meet on or before the third Monday of August to equalize the valuation of property *as between the several counties;* but a reconsideration (or equalization) of the assessment of railroad property can only be made by the Board in case a petition shall be filed by a party interested within *five days* after the assessment is made and entered.

Id.—Id.—Id.—Double Taxation—Roadbed—Roadway—Superstructure—Definition.—The *roadbed* is the foundation on which the superstructure of a roadway rests; the roadway is the right of way—which is property liable to taxation; the rails in place constitute the superstructure. An assessment of these items separately does not constitute double taxation.

Id.—Id.—Id.—Apportionment. —The Constitution does not require that the apportionment to cities and towns and to counties shall be one act.

Id.—Amendment of Code—Title of Act—Constitutional Law.—The Act of May 12, 1881, is entitled, "An act to amend Section 3713 of the Political Code, and to provide for *the levy of the tax for State purposes for the thirty-third and thirty-fourth fiscal years.*" *Held:* The title distinctly expresses the single object of the Act.

Id.—Constitutional Law—Delegation of Legislative Power—Case Distinguished.—The act referred to does not attempt to confer the power of levying a tax upon the State Board. In *Houghton* v. *Austin,* 47 Cal. 646, it was held that Section 3666 of the Political Code, as the section read originally, in so far as it delegated to the State Board the power to fix the rate of taxation, "after allowing for delinquency in the collection of taxes," was unconstitutional, because it was a delegation of legislative power. That section left it entirely in the hands of the Board

to add any sum of percentage they might deem proper in anticipation of possible delinquencies. Such attempted delegation of legislative power is not found in the act now under consideration.

Application for writ of *certiorari.*

*James A. Johnson, Lloyd,* and *Wood,* Attorneys for Plaintiff.

The State Board of Equalization had no authority to make the assessment complained of without first ascertaining the value of the property according to some law, order, or rule having the force of law regulating its mode of action. (Const. Cal., Art. xii, §§ 1, 9; Art. i, § 13; Pol. C., § 3692; *Wells, Fargo & Co.* v. *State Board of Equalization,* 56 Cal. 194.) "The value is to be ascertained as provided by law." Potter's Dwarris on Statutes, etc., 395, 403; *People* v. *Hastings,* 29 Cal. 449; *People* v. *Sneath,* 28 Id. 615.)

There is no authority given the Board by the Constitution to levy any tax or to make its assessments of railroad property the basis of taxation; that authority, whatever it may be, is given by the Code. (Pol. C., §§ 3628, 3664, 3665, 3692, 3693, 3696, and 3713.)

Sections 3664–3665, Pol. C., as amended 1880, are void, because the title of the Act does not designate the Code to which they are added, nor express the subject thereof. (Const. Cal., Art. iv., § 24; *Leonard* v. *January,* 56 Cal. 1; *Earle* v. *Board of Education,* 55 Id. 489; *Bernard* v. *University,* 57 Cal. 612.)

The Board has failed to comply with Section 9, Article xiii, Constitution of California, which requires it to give notice according to some rule of whatever it assumes to do. It has also failed in this regard to comply with the directions contained in Sections 3692–3693, Political Code.

The authority attempted to be conferred, or at least that claimed as being conferred upon the State Board, is in violation of Section 1, Article xiv of the Amendments to the Constitution of the United States. (*In re Ah Fong,* 3 Saw. 157.) Such power would also be in violation of Subdivision 10, Section 25, Article iv of the Constitution of the State.

The sworn statement of petitioner, made in due form as required by Section 3664, Political Code, had to be taken as

true, unless controverted after general investigation. (Pol. C., §§ 3664, 3693.)

No investigation, evidence, or statement was had or received by the Board, except petitioner's sworn statement above mentioned.

The attempted assessment of the roadway is void for want of description. The description must be by metes and bounds. (Pol. C., § 3664.) Sections 3664–5, Pol. C., so far as they attempt to make the assessment of the State Board valid for taxation purposes in counties, cities, towns, townships, and other local taxing districts, are void. (Const. Cal., Art. xii, §§ 12, 13; Art. iv, § 25, Subd. 9 and 10.)

The order of assessment is made for the year 1881. There is no such fiscal year. The statute authorizing a tax based upon the assessment of the Board, declares that such tax shall be for the fiscal years 33–4. No law has declared that the valuation made by the State Board of property as it existed on the first Monday in March, 1881, should be the assessment and basis of taxation for the thirty-third fiscal year. If the valuation so made be good under the tax levy act (§ 3713, Pol. C.) for the thirty-third fiscal year, it must of necessity be good for the thirty-fourth fiscal year.

The apportionment is void, because it blends all the items of property in one. (Const. Cal., Art. xiii, §§ 2, 3; *People v. Hastings*, 29 Cal. 451; *People v. Sneath*, 28 id. 615.)

The act of assessing and that of equalization are distinct, and could not have been performed at the same time. No provision is made for the equalization of the assessment after notice and an opportunity for hearing on the part of the owner of the property assessed. (*Wells, Fargo & Co. v. The State Board of Equalization*, 56 Cal. 194; *State Board of Equalization v. Supervisors of Sacramento County.*)

Double taxation is forbidden by law; therefore, the Board of Equalization erred in assessing the roadway, roadbed, and rails in the place separately, as they are all together but one— the road or roadway.

It is the duty of the Board to apportion the amount assessed, and the length of road, to each of the counties, cities and counties, cities, towns, townships, and districts. This the

Board has not pretended to do, but has contented itself with the apportionment to the counties only.

The apportionment is as much a part of the act of assessing as the valuation of the property, and without such apportionment every other act is absolutely void. If Section 3664, Political Code, should be held to mean that the County Boards can make the apportionment for the purposes of local taxation, then the section is in violation of the article and section of the Constitution above referred to, and is void. It would also violate the provisions of Sections 12 and 13, Article xi, of the Constitution.

The Act of the Legislature commonly known as the Tax Levy, which went into effect May 12, 1881, is void. 1. Because the objects of the Act are not expressed in the title. (Art. iv, § 24, Const.) 2. Because it confers the power of fixing or levying the tax on the State Board of Equalization. (See Art. xi, § 13; Art. xiii, § 6.) The sovereign power of taxation for State use can not be delegated by the Legislature to the State Board of Equalization.

*A. L. Hart,* Attorney General, for Respondent.

The power to make the said assessment, and to apportion the same, is clearly conferred upon the respondent by Section 10 of Article xiii of the State Constitution, and that section is self-executing. *(People* v. *Supervisors of Sacramento County.)*

It is argued by petitioner, however, that the foregoing provision of the Constitution is in conflict with the Constitution of the United States, because, as is alleged by petitioner, no provision is made for the equalization of the said assessment after notice and an opportunity for a hearing on the part of the owner of the property assessed; and, in support of this proposition, reliance is placed upon the fifth and fourteenth amendments to the Constitution of the United States. The vice of this argument is, that it is based upon the assumption that no provision is made in the Constitution for the equalization of assessments made by the State Board of Equalization, when in fact such provision is clearly and unquestionably made. (Const. Cal., Art. xiii, § 9.)

The only difference between the assessment of this and of other kinds of property, that can be found in the Constitution, is, that the value of the one is primarily determined by the State Board of Equalization, while the other is assessed by the county assessors and other local authorities. Assessments of this, as of all other kinds of property, go upon the county assessment roll for the purposes of State and county taxation.

The language of Section 9, of Article xiii, conferring upon the Boards of Equalization the power to equalize by raising or lowering the "entire assessment roll, or any assessment contained therein," is sufficient, therefore, to cover assessments of the character herein complained of. Plainer or less ambiguous language could not have been used to express the will of the people; and in whatever manner the powers conferred by that section may be distributed, it can not be denied that the sum total of all the powers possessed by both the Boards extend, to the equalization of all kinds and classes of property, whether it belongs to persons or to corporations.

The power to equalize such assessment being conceded, no doubt can remain as to the validity of Section 10, of Article xiii, under the provisions of which the State Board of Equalization unquestionably has the jurisdiction to make the orders herein complained of, and hence this proceeding must be dismissed.

It is not conceded, however, that the rule established in the case of *Mulligan* v. *Smith* is applicable to the general tax system under which the revenues of Government are collected. "The existence of Government depending on the prompt and regular collection of revenue must, as an object of primary importance, be insured in such a way as the wisdom of the Legislature may prescribe. There is a tacit condition annexed to the ownership of property that it shall contribute to the public revenue in such mode and proportion as the legislative will shall direct." (Cooley on Taxation, 39.)

The power of taxation is necessarily unlimited in every State, and the doctrine of "due process" is not applicable to the exercise of that power. "A legislative act,

when clearly within the limits of legislative authority, is, of itself, the law of the land." (Cooley on Taxation, 38; *Weimer* v. *Bunbury*, 30 Mich. 202.)

It results that the State Board had the power, under the Constitution, to assess the property of the petitioner, and any error committed by that Board, whether of law or of fact, was committed in the exercise of an exclusive jurisdiction conferred by the organic law. (Cooley on Taxation, 533, 534, 527, 540; *State R. R. Tax Cases*, 92 U. S. 575.)

It was proper for the Board to ignore the statement furnished to it by petitioner in the petition, and to proceed to fix the value of and assess the property of petitioner, for the reason that the statement furnished did not conform to the requirements of Section 3664 of the Political Code, and hence was no statement at all.

The statement furnished being lacking in these essentials required by statute, could properly be considered by the Board as no statement at all, and hence ignored by them; and thereupon the Board had but one course to pursue, as designated by statute—to proceed, notwithstanding the failure of petitioner to furnish a proper statement, and fix the value of and assess the property of petitioner; which valuation, when so fixed, is final and conclusive.

It is urged, however, that the assessment of the property of petitioner was made without notice to petitioner, and without the Board of Equalization having ever made any rules or regulations governing the assessment or valuation of railway property. There is nothing in the Constitution or statutes requiring such notice, or pointing out specifically the manner to be pursued by the Board in making assessments and fixing valuations. This being so, the Board may adopt such a mode of proceeding as appears to it suitable and proper. (C. C. P., § 187; *Mawson* v. *Mawson*, 50 Cal. 539; *Estate of McCauley*, Id. 544.)

If petitioner was dissatisfied with the assessment levied against its property, the law provided a remedy: to apply, within five days thereafter, by written petition, to have the assessment corrected in any particular. When such petition is filed, the Board must fix a time for hearing, and must,

upon such hearing, receive such proof as may be offered. (Pol. C., § 3664.)

The point made in the brief of petitioner, that the State Board of Equalization failed to comply with Section 9, Article xiii of the Constitution, relative to the giving of notice, is entirely without support from the reading of the section referred to. The section has no reference to the original assessment. Such original assessment may be made without notice. The section of the Constitution applies only to proceedings taken by the Board to equalize assessments already made. In the case of petitioner, since no proceedings were taken to change or equalize the assessment after it was made, it is to be presumed that both petitioner and the Board were at the time satisfied with the assessment as made.

*James A. Johnson* and *Lloyd & Wood,* for Plaintiffs, in reply.

The power conferred upon the State Board of Equalization relative to the assessment of railroads operated in more than one county is in violation of the Fourteenth Amendment to the Constitution of the United States.

An obligation rests upon every property owner to contribute his proportionate share to the support of the Government. To enforce this obligation, the Constitution of the State of California provides a system applicable to the great mass of property, the salient features of which are that all property shall be taxed in proportion to its value, to be ascertained as provided by law. (Art. xiii, § 1.) That property shall be assessed in the county, city, or district in which it is situated, in the manner prescribed by law. (Art. xiii, § 10.) That the Boards of Supervisors must equalize the valuation of the taxable property of the county (Art. xiii, § 9), and that a State Board of Equalization shall equalize valuations as between the counties. (Id.)

This system requires legislation to carry it into effect—the manner of assessment and the means by which the proportions are to be ascertained are left to legislation, except in so far as means for the latter purpose are found in the constitutional requirements relative to the Boards of Equalization. The legislation providing the manner of assessment and the

means of ascertaining proportions must be had in subordination to the constitutional provisions that "all laws of a general nature shall have a uniform operation" (Art. i, § 12); that "no local or special laws" shall be enacted "for the assessment or collection of taxes" (Art. iv, § 25, Subd. 10); that "privileges and immunities" shall not be granted to any citizen or class of citizens "which, upon the same terms, shall not be granted to all citizens" (Art. i, § 21); and that no person shall "be deprived of life, liberty, or property, without due process of law." (Art. i, § 13.)

All of the safeguards compatible with the power involved, are thrown around its exercise. The right of local self-government is acknowledged, for the assessment must be made by local officers. That each person is to pay a local tax in proportion to the value of his property, is admitted in the creation of a local board to adjust proportions. That the State tax is to be apportioned so that equality is preserved between the taxpayers of different localities, a State board has been created to adjust proportions between the localities; but above all, the right of every person to be heard, at some point of time before his liability becomes fixed, is recognized as a fundamental principle.

Having instituted this system, co-extensive in its operation with the territorial limits of the power levying the tax, and including within its scope all kinds of property, the same Constitution provides: "The franchise, roadway, roadbed, rails, and rolling stock of all railroads operated in more than one county in this State, shall be assessed by the State Board of Equalization, at their actual value, and the same shall be apportioned to the counties, cities and counties, cities, towns, towships, and districts in which such railroads are located, in proportion to the number of miles of railway laid in such counties, cities and counties, cities, towns, townships and districts."

Franchises, roadways, roadbeds, rails, and rolling stock, as separate and distinct classes of property, are not withdrawn from the operation of the general rule, for such property, when not owned by railroad companies, or even when owned by railroad companies, the roads of which are operated in a single county, are governed by the general rule

Property situated partly in one county and partly in another, is not, as a class, so withdrawn, for lands and houses so situated fall within the general rule. Property operated in more than one county is not, as a class, so withdrawn, for telegraph lines, water, ditches, flumes for transporting lumber for hire, stage and freight lines, turnpike roads, and other property so operated, fall within the general rule.

If a classification based upon use is admissible, none such has been made, for all property used in more than one county has not been included. If a classification based upon ownership is admissible, not such has been made, for all property owned by persons operating in more than one county has not been included.

Locomotives, as a species of property, are not to be assessed by the State Board; but whether they are to be so assessed is made to depend upon whether they are owned by given persons or corporations. In other words, the discrimination is in part, between owners of the same species of property.

No class or genus or even species of property has been separated from the great mass and made subject to a special rule, but certain property has been taken out of the rule applicable to its species, and has been made, by reason of its ownership, subject to the special rule, and, as to it, none of the safeguards thrown around the enjoyment of other like property has been preserved.

No local assessor may fix its value; no local board may consider it in adjusting proportions for local taxation. Its owner may not appeal to the local tribunal open to the owners of other property. (*State Board of Equalization* v. *Board of Supervisors of Sacramento County.*) The clause of the Constitution, which attempts to confer the whole power of valuation upon the State Board of Equalization, is arbitrary and self-executing. The Board may exercise its power unrestrained by the established principles of private rights and distributive justice.

The power of this board under the Constitution is strongly but accurately stated by the Attorney General in his brief filed in the Supreme Court of California in the case of the *San Francisco and North Pacific Railroad Company* v. *The State Board of Equalization.* (Brief, p. 11.) Says the

learned Attorney General: "There is nothing in the Constitution or statutes requiring such notice (a notice of some kind to the property owner before his liability is fixed), or pointing out specifically the manner to be pursued by the Board in making assessments and fixing valuations. This being so, it may adopt such a mode of proceeding as appears to it suitable and proper. * * * If the Board has adopted no general rules applicable to all cases, then whatever manner was adopted by the Board to make the present assessment complained of became the rule of this case. The Board, having authority to make rules for its government, can change such rules as often as it sees fit; can adopt a new rule for each case that comes before the Board, if it desires so to do."

From the time of the establishment by James II. of the "High Commission" to the time of the creation of the State Board of Equalization in California, no tribunal has existed, either in England or America, which even claimed the right to deal with life, liberty, or property, subject to no rules except those of its own pleasure, and changeable at its own will.

It becomes a Court to pause before giving ear to the monstrous pretensions of the State Board of Equalization, voiced by the Attorney General. Nearly two centuries have elapsed since the unlimited power to deprive the citizen of property, except in accordance with the "laws of the land," has been asserted in any country where the English language prevails. It is historical that the "High Commission" dared not enforce its judgments against property, because an attempt to do so would enable the party injured to invoke the jurisdiction of the common law Courts. That the Solicitor General shrank from facing such a Court, packed even though it was with a claim that the "High Commission," in passing upon property rights, "could make rules for its own government, change such rules as often as it saw fit, and adopt a new rule for each case if it desired so to do."

Lord High Steward Jeffries' answer to the Bishop of London, descriptive of the powers of that tribunal, "This Court does not proceed upon written allegations; its proceedings are summary and by word of mouth; no fixed mode of procedure, no rules of evidence govern its movements," is the same

description which the Attorney General gives of the powers of the State Board of Equalization. The existence of unlimited power, the Attorney General feels, must be maintained, or all proceedings of the State Board of Equalization applicable to the case in hand must fall. The Federal Constitution forbids the exercise of such powers.

The provision of the State Constitution making the discrimination and conferring the power in question is obnoxious to the fourteenth amendment to the Federal Constitution.

1. It denies to persons within the jurisdiction of the State the equal protection of the laws; and,

2. It deprives such persons of their property without due process of the law.

The provision of the State Constitution which provides for the assessment of the property of railroad companies operating in two or more counties, denies to such companies the protection of the general rules prescribed in the same Constitution, and is therefore void.

The people of the United States have ordained (§ 1, Art. xiv, Const. of U. S.) that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States * * * nor deny to any person within its jurisdiction the equal protection of the law."

These inhibitions upon the States apply "to all the instrumentalities and agencies employed in the administration of its government." (*Ah Kow* v. *Nunan*, 3 Saw. 552.)

"It is doubtless true that a State may act through different agencies—either by its legislative, its executive, or its judicial authorities; and the prohibitions of the amendment extend to all actions of the State denying equal protection of the laws, whether it be action by one of these agencies or by another." (*Virginia* v. *Rives*, 100 U. S. 318; *Ex parte Virginia*, Id. 346.)

The language of the Fourteenth Amendment, in so far as it deals with "privileges and immunities," is not new even to the Federal Constitution.

The second section of Article iv of the Federal Constitution, declares that "the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States."

The section last cited has universally been held, among other things, to mean that the citizens of all the States shall have the peculiar advantage of acquiring and holding real as well as personal property, and that such property shall be protected and secured by the laws of the State in the same manner as the property of the citizens of the State is protected, and that such property shall not be liable to any taxes or burdens which the property of the citizen is not subject to. (*Campbell* v. *Morris*, 3 Har. & M. 554; *Corfield* v. *Coryell*, 4 Wash. 371; *Ward* v. *Morris*, 4 Har. & M. 338; *Wiley* v. *Parmer*, 14 Ala. (N. S.) 632; *Crandall* v. *State*, 10 Conn. 343; *Oliver* v. *Washington Mills*, 11 Allen, 281.)

The object of this constitutional provision was to prevent discriminations in these respects between citizens of the State in which the law was enacted, and citizens of other States in the Union. The prohibition referred to and contained in the Fourteenth Amendment is in the same words, but is directed to the States, and forbids discrimination between citizens of the same State.

The last clause of Section 1, Article xiv, Federal Constitution, forbids any State " to deny to any person within its jurisdiction the equal protection of the law."

Equality of protection is assured to every one. The prohibition " implies not only," says Mr. Justice Field (*Ah Kow* v. *Nunan*, 3 Sawy. 552), " that the Courts of the country shall be open to him on the same terms as to all others, for the security of his person or property, the prevention or redress of wrongs, and the enforcement of contracts; but that no charges or burdens shall be laid upon him which are not equally borne by others." (*Missouri* v. *Lewis*, 101 U. S. 22.)

In the case cited it was held, substantially, that a State may establish one system of law in one portion of its territory, and another system in another; provided, always, that it neither encroaches upon the proper jurisdiction of the United States, nor abridges the privileges and immunities of citizens of the United States, nor deprives any person of his rights without due process of law, nor denies to any person within its jurisdiction the equal protection of the laws.

To maintain the validity of the Constitution of the State of California in respect to the subject-matter of this action,

it must be held that every other taxpayer in a county, except the parties in interest here, may apply to the local Board of that county acting in a judicial capacity, to redress a wrong done by an assessor in the valuation of his property, or to relieve him of a burden not equally borne by others; but the parties in interest here can not so apply. Can a law which admits of a proposition so monstrous, be upheld in the very face of a constitutional provision which may be summed up in a single sentence—" The equality of all before the law?"

The new Constitution of California (Art. ii, § 11) provides, that "all laws of a general nature shall have a uniform operation;" and in Section 21, Art. xxi, makes the declaration: "Nor shall any citizen or class of citizens be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens." The language of these clauses, which limit the power of the Legislature, if we substitute the word "persons" for "citizens" in the last clause, would be the exact equivalent of the language of the Fourteenth Amendment to the Federal Constitution, which limits the power of the States. (*Brooks* v. *Hyde,* 37 Cal. 376–378; *Ward* v. *Flood,* 48 id. 50; *Guy* v. *Hermance,* 5 id. 74.)

If we were here assailing a legislative enactment making the discrimination in question, it would be clear that the enactment could not stand in the face of Sections 11 and 21 of Article i of the State Constitution.

In this case, the want of uniformity and equality in rights and privileges finds its source in the Constitution. It is the Constitution which gives to one person the right to appeal to a local Board and denies the right to another. It is the Constitution which makes the other discriminations of which the petitioner complains.

But this places the respondents in no better position, for if Sections 11 and 21 of Article i of the State Constitution would in themselves and standing alone deny the power to the Legislature, it must follow, as a logical result, that section 1 of Article xiv of the Federal Constitution, which is in substance the equivalent of the sections of the State Constitution cited, has no less effect than to deny the power to the State.

The discriminations complained of are: 1. A different manner of assessment; 2. Denial of appeal to local board; 3.,

The proceedings in relation to the property here involved is without notice; and, 4. That none of the safeguards which the law throws around the assessment and valuation of other property are applied.

An assessment is of the very essence of taxation. (Burroughs on Taxation, 194; Cooley on Taxation, 244, 245, 259; Hilliard on Taxation, 290, 291.)

There must be uniformity in the mode of assessment as well as equality in the rate of taxation. (Cooley on Const. Lim., 3d ed., p. 622; *Knowlton* v. *Supervisors*, 9 Wisc. 410; *Pike* v. *The State*, 5 Ark. 206; *Exchange Bank* v. *Hines*, 3 Ohio St. 15; *People* v. *Whyler*, 41 Cal. 355.)

That there is no appeal to local boards of equalization has been determined by this Court. (*State Board of Equalization* v. *Sacramento Co.*, Cal.)

The provisions of the State Constitution which provide for the assessment of the property of railroad companies operating in two or more counties, if enforced, would deprive such companies of their property without due process of law.

Section 1 of Article xiv of the Federal Constitution declares: "Nor shall any State deprive any person of life, liberty, or property, without due process of law."

"Nor (shall any State) deny to any person within its jurisdiction the equal protection of the laws."

This is the mandate of the Federal Constitution. Let us try the provisions of the Constitution of California, relating to revenue, by this supreme rule.

The owners of railroad property operated in more than one county are denied any protection from the laws, which, 1. Require that property shall be taxed in proportion to its value. 2. Require such proportions to be ascertained by a general law. 3. Require that, before liability is fixed, an opportunity to be heard must be given. 4. Give an appeal from the assessor to another tribunal. 5. Require the assessment to be made in the county, and prevent its being made in localities distant from the *situs* of the property; and, 6. Which prescribe the mode and manner of the assessment. Each of which laws goes to the very essence of the taxing power.

No such discriminations have ever been attempted in any State. It is true that in some States laws exist for the as-

certainment of the value of railroad property by tribunals differently constituted from the tribunals which ascertain the values of other property. But such tribunals have jurisdiction over all railroad property. They must proceed upon notice. The manner of their proceeding is regulated by laws analogous to the laws governing other tribunals exercising like powers—by laws which throw around the owners of such property every protection which the laws give to the owners of other kinds of property.

In *Ex parte Denis Kearney*, 55 Cal. 212, the Supreme Court of California quotes with approval the language of Campbell, J., in *Jackson* v. *The People*, 9 Mich. 111, that "the Constitution, in apportioning the judicial power as well as in affirming the immunity of life, liberty, and property, has always been understood to guarantee to each citizen the right to have his title to property and other legal privileges determined by the general tribunals of the State." (*Stuart* v. *Palmer*, 74 N. Y. 191; *Ford's Case*, 6 Lans. 92; *Barhyte* v. *Shepherd*, 35 N. Y. 238; *Clark* v. *Norton*, 49 Id. 243; *Overing* v. *Foote*, 65 Id. 263; *Murray's Lessee* v. *Hoboken Land etc. Co.*, 18 How. (U. S.) 272.)

McKinstry, J.:

An application on *certiorari* to annul certain orders of respondent assessing the property of a railroad corporation. The following is a summary of petitioner's points:

1. Respondent had no power to make the assessment without first ascertaining the value of the property according to some law, order, or rule regulating its mode of action.

2. Sections 3664 and 3665 of the Political Code, as the same were adopted by the Legislature of 1880, are *void*, because the title thereto did not express their object; and, as amended in 1881, are void, because not passed by the constitutional majority.

3. The State Board has failed to comply (*a*) with Section 9 of Article xiii of the Constitution, which requires notice, etc. (*b*) Has failed, in this regard, to comply with Sections 3692 and 3693 of the Political Code. (*c*) If the Constitution of the State has attempted to confer the power on the State Board which it pretends to exercise, the provision of the

State Constitution is violative of the Constitution of the United States. (*d*) Also, of Subdivision 10 of Section 25, Article iv, of the State Constitution.

4. The "sworn statement" of petitioner is to be taken as true and correct, since it does not appear that any "general investigation" was had by the State Board, before the valuations in the petitions were increased.

5. The assessment of petitioner's "roadway" is void, because the roadway is not therein described by "metes and bounds."

6. Sections 3664 and 3665 of the Political Code are void in so far as they attempt to make the assessment by the State Board a basis of taxation for county purposes, city purposes, etc.

7. The order of the State Board is not an assessment for purposes of taxation, the assessment being for the year 1881, there being no such "fiscal" year, and no law declaring the valuation made for "1881" the basis of taxation for the thirty-third or thirty-fourth fiscal year.

8. The assessment is *void* because it blends the several items of property in one.

9. The assessment could only be equalized when petitioner applied to the Board, in the month of September.

10. The assessment is *void* because it attempts to assess the same property *thrice*, the roadway, roadbed, and rails being the same.

11. The assessment is *void*, because the record fails to show that it has been apportioned to the *cities, towns*, etc.

12. The Act of the Legislature which went into effect May 12, 1881, is *void:* First, because the object of the Act is not expressed in the title; second, it attempts to confer the power of levying a tax on the State Board of Equalization.

After consideration of the points made by counsel for petitioner, we say:

1. Had the Board power to proceed to the assessment without previous and independent ascertainment of the value under some law, order, or rule? In *People* v. *Supervisors of Sacramento County*, this Court said: "But it is the manifest intent of the Constitution that the valuation of the railroad property, mentioned in Section 10 of Article xiii, shall be

finally fixed and determined by the State Board of Equaliza-
tion—the State Board has the exclusive power to assess and
equalize its value.   Thus the Constitution furnishes a system
for the assessment of railroads, operated in more than one
county, which is separate and distinct from that provided for
the assessment of other property.   The system is prescribed
in Section 10 of Article xiii.   'The franchises, roadway,
roadbed, rails, and rolling stock of all railroads operated in
more than one county in this State shall be *assessed* by the
State Board of Equalization, *at their actual value,* and the
same shall be apportioned to the counties, cities and counties,
cities, towns, townships, and districts in which said railroads
are located, in proportion to the number of miles of railway
laid in such counties, cities and counties, cities, towns, town-
ships, and districts.'   It can not be doubted (if the Constitu-
tion is constitutional) that the State Board of Equalization
has power thus to assess the railroad property mentioned in
Section 10 of Article xiii, and to apportion the same to the
several counties, etc.   The portion of the section quoted is
clearly self-executing.   We are at a loss to imagine how any
statute could make the duty of the State Board any clearer
than does this distinct and positive mandate of the Constitu-
tion.   If any doubt could possibly be built upon the words
cited it would be dispelled by the first clause of the same sec-
tion.   'All property, *except as hereinafter in this section pro-
vided,* shall be assessed *in* the county, city, city and county,
town, township, or district in which it is situated *in the man-
ner prescribed by law.'*   Thus by the very language of the
Constitution all other but the railroad property mentioned
must be assessed by the local assessors, in the manner pre-
scribed by statute; the railroad property must be assessed in
the manner prescribed by the sections of the Constitution."
(8 Pac. L. J. 103.)   That is, by the State Board without the
aid of statute.

2. Are sections 3664–3665 of the Political Code of none
effect for the reasons stated in point two, as above stated ?
The title of the Act of 1880 (Amendments to the Codes, 1880,
p. 5), must be held to be sufficient.   It has been repeatedly
assumed here, that, under the present Constitution, a title ex-
pressing the object of an Act to be "to amend Section ——"

of a named Code "relating to" the particular object treated of in the body of the Act, was a compliance with Section 24 of Article iv. The title of the Act now under consideration, shows that the sections added, are to be added to the *Political* Code, and relate to the object already mentioned. If, therefore, the attempt to amend Sections 3664–3665, in 1881, failed by reason of the amendment not receiving the necessary majority, the action of the State Board in assessing the petitioner's property may be upheld by the Act of 1880.

But the Board had the power under the *Constitution.* It may be admitted that the Legislature may prescribe their mode of procedure; limit the period in each year within which the Board can assess; determine how their records shall be kept; regulate their conduct to any extent which does not detract from their powers, nor relieve them of duties imposed by the Constitution. Under the Constitution no other officer or board can assess the property of railroads, operated in more than one county, and the State Board is commanded to assess it at its *actual value.* If the Legislature fails to regulate the mode, the power and duty is in the State Board of Equalization to assess at the actual value. It is of the *assessment* that petitioner complains. The Legislature can not relieve the railroad property of all taxation by neglecting to add further machinery to the sufficient direction which is found in the self-executing mandate of the Constitution.

3. In answer to the subdivisions of point three we say: (*a*) Section 9 of Article xiii, so far as it relates to the State Board, has reference to the equalization of assessments *between counties.* (*b*) The ninth subdivision of Section 3692 of the Political Code also refers to the equalization between counties; and Sections 3692 and 3693, if they attempt to provide for the equalization of individual assessments, are void. (*Wells, Fargo & Co.* v. *State Board of Equalization,* 56 Cal. 194.) (*c*) The particular provision of the Constitution of the United States claimed to be violated by the provision of the State Constitution is found in Section 1 of the Fourteenth Amendment: "No State shall deny to any person the equal protection of the laws." The Constitution of the State requires *all* property to be assessed at its actual value. We are unable to see how the fact that the value of one kind of

property is to be ascertained by one officer or Board and the value of another kind of property by another officer or Board —each clothed with the duty and responsibility of ascertaining the *actual* value—can be held to operate a deprivation of legal protection to the owners of either kind of property. The State Board in the one case, the Assessors and County Boards in the other, are but different instrumentalities through which the same result is reached; the fair and just valuation by reference to the same standard—and therefore the equal and uniform valuation — of property for purposes of taxation. (*d*) As to the proposition that Section 10 of Article xiii, conflicts with Subdivision 10 of Section 25 of Article iv without pausing to inquire which of the two provisions should be disregarded if they could not co-exist, it is enough to say that the section of the Constitution first mentioned is not "a local or special law" passed by the Legislature.

4. In support of the fourth point, as above stated, counsel relies upon Sections 3664 and 3693 of the Political Code. Section 3693 has reference to the equalization of assessments in counties. Section 3664 requires the President, or some officer of a corporation operating a railroad in more than one county, to furnish the State Board with a sworn statement of its property and values. It is added that if the corporation shall fail to furnish the statement, the State Board shall fix the value and proceed to assess the property of the corporation so failing, the valuation fixed by the Board to be final and conclusive. But the Constitution imposes the duty of *assessing* the property of the corporations upon the State Board of Equalization. The provision of the Code ought not to be construed, and can not fairly be construed, to make each railroad corporation the assessor of its own property, in case it chooses to file a statement. Doubtless the Board will place much reliance upon the statements, and will start with a presumption that they are correct, but if satisfied that property has been omitted from them by mistake, or that the valuation in them contained is too low, must perform its duty of assessing *all* of the property at its "actual value." If the statement is not furnished, the valuation of the Board becomes "final and conclusive." This is to be read in connection with the clause in the same section: "Any person dissatisfied with an assess-

ment made by said Board of Equalization against his or its property may, within five days after such assessment is made and entered of record on the books of said Board, by written petition, apply to said Board to have the same corrected in any particular." Where no "sworn statement" is filed, the corporation is cut off from its right to appeal to the Board, within five days, to have its first assessment corrected. And since it is only where a statement has been presented that the application can be made to have the assessment corrected, the assessment made by the *Board*, after the statement is furnished, is the one which may be corrected. It was certainly not the purpose of the statute to allow the corporation to complain of—and have corrected—its own sworn statement.

The foregoing, of course, is (as are the points of petitioner) based upon the assumption that the section of the Code is valid.

5. The description of the "roadway" is sufficient. The statute reads: "By metes and bounds, or *other* description sufficient for identification." Here the *termini*, courses, and distances are given. The law fixes the width.

6. In support of the sixth point, petitioner cites the Constitution (Art. xi, §§ 12, 13; Art. iv, § 25). Even if the Sections 3664 and 3665 were of none effect, so far as they make the assessment the basis of city and town taxation, the assessment before us would be valid. It is not necessary, in the present case, to decide whether Section 10 of Article xiii intends to make the assessment by the State Board of railroad property the assessment upon which the taxes in cities, etc., of such property, shall be collected for local purposes. If such is the proper interpretation of Section 10, Article xiii, it is to be read in connection with the other provisions. Each provision of the Constitution is to be given its proper effect. If in one section a power is specially conferred, or a duty specially enjoined, which, in general terms, is prohibited by other sections, the power or duty specially conferred or enjoined constitutes an exception to the general rule; the direction to employ the power or discharge the duty in the particular instance, is as mandatory as the general prohibition.

7. The tenth Section of Article xiii provides, that the railroad property shall be assessed by the State Board; the

Political Code, Section 3692, that the State Board shall assess such property *annually*, on or before the first Monday in March. The very notion of an assessment involves the fixing of values as of a certain date, since there is no mode of making the valuation vary with the increased or diminished value during the current year, and, if there were, such varying valuations would be destructive of established principles of uniformity. The annual valuation by the State Board, which precedes the fixing of the rate of taxation, applies to the rate which for State purposes is fixed for two years, and for county (city, etc.) purposes, perhaps, for a single year. The order of assessment made on or before the first Monday of March need not declare the particular fiscal year or years to which it is applicable. It is made applicable, by fair construction of the Constitution and Statutes, to the orders fixing the rate of taxation which next succeed it.

8. The order of assessment does assess separately the franchise, roadway, roadbed, rails, and rolling stock—the several subjects of taxation mentioned in the Constitution and Code. (Art. xiii, § 10; Pol. C., § 3692.) It is not necessary, therefore, to determine whether it is obligatory on the Board separately to specify the several items of railroad property. The Constitution does not, in terms, require that the assessed value of each item should be separately *apportioned* to the several counties; and that the Political Code does not contemplate such separate distribution is sufficiently apparent from Section 3650. That section provides that the Assessor shall prepare an assessment book, in which must be specified in separate columns, under appropriate heads: 1. The *names* of persons assessed; 2. Land by township, etc.; 3. City and town lots; 4. Personal property, showing number, kind, etc.; 5. Cash value of real estate, etc.; 6. Of personal property; 7. Money; 8. "The assessment of the *franchise, roadbed*," etc., such as may have been made by the State Board and furnished to him; * * * 14. Total value of all property. It thus appears that while as to assessments made by the Assessor the kinds are to be separately stated, the assessment by the State Board of the "franchise, roadbed," etc., is entered in one column and as a single item.

9. It is true, that by Section 3664, the assessment of railroad property must be made (as in the case before us it was in fact made) on or before the first Monday of May. It is also true that by the same section the Board must meet on or before the third Monday of August to equalize the valuation of property as between the several counties. But a reconsideration of the assessment (or equalization) of railroad property can only be made by the State Board in case a petition shall be filed by a party interested, within *five days* after the assessment is made and entered.

10. "The roadbed is the foundation on which the superstructure of a railroad rests." (Webster.) The roadway is the right of way, which has been held to be property liable to taxation. (*Appeal of N. B. & M. R. R. Co.*, 32 Cal. 499.) The rails in place constitute the superstructure resting upon the roadbed.

11. Even if, as claimed, the assessment is not apportioned to cities, etc., the orders are nevertheless valid. The Constitution does not require that the apportionment to counties and to cities, etc., shall be one act. *Non constat,* but apportionment has been made to cities, towns, etc. The apportionment to a county is a single act, complete in itself.

12. The Act of May 12, 1881, is entitled "An Act to amend Section 3713 of the Political Code, and to provide for *the levy of the tax for State purposes for the thirty-third and thirty-fourth fiscal years.*" The title distinctly expresses the single object of the Act.

The Act does not attempt to confer the power of levying a tax upon the State Board. In *Houghton* v. *Austin*, 47 Cal. 646, it was held that Section 3666 of the Political Code, as the section read originally, in so far as it delegated to the State Board the power to fix the rate of taxation "after allowing for delinquency in the collection of taxes," was unconstitutional, because it was a delegation of legislative power. That section left it entirely in the hands of the Board to add any sum or percentage they might deem proper in anticipation of possible delinquencies. Such attempted delegation of legislative power is not found in the Act now under consideration. The Board is commanded to add twelve per centum, neither more nor less, for delinquencies. The twelve per

cent. is as definitely fixed as is any portion of the tax levied by the law-making power.

Orders affirmed.

Ross and McKee, JJ., concurred.